IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH OBERDIECK,            ) | 1:10cv01692 AWI DLB |
|                             ) | |
|        Plaintiff,           ) | FINDINGS AND RECOMMENDATIONS |
|                             ) | REGARDING PLAINTIFF'S |
|                             ) | SOCIAL SECURITY COMPLAINT |
|                             ) | |
|    vs.                      ) | |
|                             ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security,            ) | |
|                             ) | |
|        Defendant.           ) | |
| _____) | |

## BACKGROUND

Plaintiff Keith Oberdieck ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") pursuant to Titles II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff protectively filed for DIB on August 30, 2006. AR 77-84, 85. He alleged disability since November 1, 2005, due to degenerative joint disease of the left knee, rheumatoid arthritis, morbid obesity and fibromyalgia. AR 98-106. After being denied initially and on reconsideration,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 55-58, 62-66, 67. On November 14, 2007, ALJ Sandra K. Rogers held a hearing. AR 34-52. ALJ Rogers issued a partially favorable decision on February 27, 2008, finding Plaintiff disabled beginning December 21, 2007. AR 9-19. On July 15, 2010, the Appeals Council denied review. AR 1-5.

Hearing Testimony

ALJ Rogers held a hearing on November 14, 2007, in Stockton, California. Plaintiff appeared with his attorney. Vocational expert ("VE") Stephen Schmidt also appeared. AR 36.

Plaintiff was born in 1953. He is 5'11½" tall and weighs 331 pounds. In the last two years, he has lost weight from 385 pounds. His doctor has him on a diet. AR 37.

Plaintiff is married and lives with his spouse. He has a driver's license and drives five days a week. He continuously uses a cane in his right hand, which was prescribed by Dr. Cook. He uses the cane to get up from a seated position and when he walks or stands. He has had the cane approximately two-and-a-half years. AR 37-38.

Plaintiff reported that he completed the twelfth grade. After that, he trained in motorcycle mechanics and was a BMW certified master technician. He quit his work as a technician because he started losing the ability to do fine and small work with his hands. He was diagnosed with rheumatoid arthritis and fibromyalgia. When he left the technician position, he worked as a janitor and groundskeeper for a church. He worked at the church for four years. He quit because his knee "had gotten so bad and . . . [his] job was phased out." AR 39-40.

Plaintiff believed that he could not work full time because of his left knee, fibromyalgia and rheumatoid arthritis. He sees a specialist, Dr. Schunke, for his rheumatoid arthritis and fibromyalgia. His problems limit his mobility. He also has fatigue and constant pain. Plaintiff explained that in the morning he has sharp pain in his hands and shoulders that loosens up by the afternoon. To relieve the pain, he takes prescription medications, relaxes, and moves slowly. He keeps his feet up for about six to eight hours a day. He has used heat and cold, but they don't work. AR 40-42.

Plaintiff reported that his medications upset his stomach. He also gets slight withdrawals from Vicodin if he goes too long without it. He takes over-the-counter medication for his stomach

1  problems. AR 42.

2       Plaintiff testified that the longest he can be on his feet at one time is five minutes. He can sit
3  comfortably in a chair for a half hour. The heaviest thing he can lift is about 15 pounds. He can use
4  his hands for about 20 minutes before he has to stop and rest for 5 to 10 minutes. AR 42-43.

5       Plaintiff reported that he takes medicine for depression, but does not see a psychiatrist or
6  psychologist. The depression keeps him from working because he has no desire or motivation. AR
7  43-44.

8       Plaintiff also reported that he has problems with diarrhea. He was told by a doctor that it is a
9  side effect of fibromyalgia. On a bad day, he may use the bathroom six or eight times. He has bad
10 days about four or five times a month, but doesn't have to wear diapers or pads. AR 44-45.

11      Plaintiff testified that he had a left knee replacement in August 2007. Two years before that,
12 he had an arthroscopic procedure, which did not help. AR 45-46.

13      On a typical day, Plaintiff wakes up at 6:30 or 7:00. His wife serves him breakfast and he sits
14 in his chair watching TV. At about 9:00, he tries to clean up the kitchen and load the dishwasher.
15 He will take a break, read e-mail, get dressed and sit with his feet up for an hour. He then goes into
16 the garage to do a little light woodwork. Around noon, he eats his lunch and takes a break until 1:00
17 or 1:30. After that, he goes back out to the garage and "piddle[s] around with [his] woodworking."
18 He comes inside at 3:30 or 4:00 and puts his feet up. He eats dinner at 5:30 or 6:00, watches TV
19 until 9:00 or 9:30 and then goes to sleep in his recliner. AR 46.

20      Due to his condition, Plaintiff indicated that he had to stop cleaning house and taking care of
21 his yard. He has lost interest in his hobbies, such as photography. He does as much woodworking as
22 he did before, but no longer builds furniture. Instead, he carves walking sticks and canes. It bothers
23 his hands, so he only works ten minutes at a time. Plaintiff reported that his left leg swells from
24 activity and his hands swell in the winter. The woodworking does not cause swelling, but it does
25 increase his pain. AR 47.

26      In response to questions from the ALJ, Plaintiff explained that after knee replacement surgery
27 he no longer has constant knee pain, but it is not any easier to stand or walk, and his ability to sit

28                                                  3

1  hasn't changed.  AR 48-49.

2  The VE also provided testimony.  He characterized Plaintiff's past relevant janitor work as
3  medium, SVP 3, and semi-skilled.  His motorcycle repair work was heavy, SVP 6 and skilled.
4  Plaintiff did not have skills transferable to light or sedentary jobs.  AR 49.

5  For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
6  education and work experience.  The ALJ asked the VE to further assume that this person was
7  limited to light work that did not involve constant or repetitive use of the hands.  The VE testified
8  that this person could not perform Plaintiff's past relevant work, but there would be other jobs
9  existing in the national or regional economy that this person could perform, such as information
10 clerk or garage attendant.  AR 49-50.  In response to questions from Plaintiff's counsel, the VE
11 clarified that the hypothetical person could use his hands up to two-thirds of the day.  AR 50-51.

12  Medical Record

13  On October 31, 2005, Plaintiff saw Dr. Paul Schunke for followup of probable rheumatoid
14 arthritis, largely with hand involvement, and fibromyalgia.  He was taking Vicodin for left knee pain,
15 but denied right knee pain and foot pain.  On examination, the small joints of his hands showed some
16 tenderness to the PIP and MCP joints, but there was no definite swelling and he could make full fists.
17 Plaintiff's wrists, elbows, shoulders and ankles were normal and his knees were without definite
18 swelling.  Plaintiff appeared stable on his current regimen.  AR 162.

19  On November 16, 2005, Dr. Robert Cash performed arthroscopy of Plaintiff's left knee with
20 excision of a loose body, along with a partial medial meniscectomy and a three compartment
21 synovectomy.  AR 205-07.

22  On November 30, 2005, Plaintiff saw Dr. Cash for evaluation of his left knee following
23 arthroscopy.  On examination, Plaintiff had fair mobility and some crepitus.  Dr. Cash opined that
24 Plaintiff was doing well and recommended weight loss.  Plaintiff could return to work duties as of
25 January 1, 2006.  AR 230.

26  Beginning in January 2006, Dr. Mark D. Cook followed Plaintiff's progress on weight loss
27 and a low amylose diet, along with addressing Plaintiff's fatigue and hyperlipidemia  AR 178-82.

28

On May 4, 2006, Plaintiff saw Dr. Schunke for follow-up on his rheumatoid arthritis and fibromyalgia. Dr. Schunke commented that Plaintiff used a cane in his right hand, but it was the left knee that was involved. His joint pain was unchanged with "overall good symptomatic control." On examination, Plaintiff's wrist, elbows, shoulder and small joints of the hands were normal. His knees were without definite swelling. Dr. Schunke opined that Plaintiff was stable. AR 161.

On June 29, 2006, Plaintiff complained of persistent back pain after straining his back. On examination, his range of motion was full. Dr. Cook indicated persistent lower spine dysfunction, acute on chronic re-injury. He was to undergo acupuncture evaluation and treatment. AR 177.

A lumbar spine x-ray completed on June 30, 2006, showed slight progression of degenerative changes in facet joints at L4-5 and L5-S1 since a previous examination in November 1999. Additionally, there was greater spurring and some progression of disc space narrowing. However, no acute abnormality was outlined. AR 199.

On July 6, 2006, Dr. Cook prescribed continued use of Methadose for back pain. AR 176.

On August 17, 2006, Plaintiff saw Dr. Cook for complaints of decreased libido, heat intolerance, low energy, weight gain, fatigue, obesity, low back pain and diffuse joint aches. A review of systems was negative for pedal edema, arthralgias, back pain, limb pain, myalgias, anxiety, depression or sadness. Dr. Cook recommended that Plaintiff redouble his effort for a low amylose, low cholesterol diet, noting that Plaintiff had been getting a great deal of bread and other carbs over the last weeks. AR 173-74.

On August 31, 2006, Plaintiff again saw Dr. Cook for complaints of a decreased libido, low energy, fatigue, obesity, low back pain and diffuse joint aches. Plaintiff described mild fatigue and mild tiredness. He reported mild low back pain with exacerbation from painting a house. He described moderate joint pains, including the left knee. He denied depression. On review of his systems, Plaintiff was negative for pedal edema, back pain, limb pain, arthralgias, myalgias, anxiety, depression or sadness. On examination, he had full range of motion of his neck, no edema, normal gait, grossly normal tone and muscle strength, and full, painless range of motion of all major muscle groups and joints. Dr. Cook assessed Plaintiff with decreased libido, lack of energy, morbid obesity,

5

low back pain and joint pain in multiple sites. Dr. Cook recommended increased physical activity for Plaintiff's lack of energy. He also recommended cold and heat, massage, back strengthening exercises and weight loss for lower back pain, along with ice and heat, a compression wrap, elevation and progressive weight bearing for joint pain. Dr. Cook noted that Plaintiff had lost 10 pounds. AR 170-72.

On October 16, 2006, Plaintiff saw Dr. Schunke for follow-up on his rheumatoid arthritis and fibromyalgia. Plaintiff reported right knee pain with a total knee replacement planned if he was successful at weight loss. He was taking Vicodin four times per day, largely for knee pain. Plaintiff also reported a mild increase in posterior cervical pain. On examination, Plaintiff weighed 322 pounds. His hands, wrists, elbows, shoulders and ankles were normal. His cervical spine motion was not limited and his knees were without effusions. Dr. Schunke indicated that Plaintiff's rheumatoid disease seemed stable on the current regimen. AR 226.

On October 26, 2006, Dr. Cook reported that Plaintiff had normal tone and muscle strength, full, painless range of motion of all major muscle groups and joints and no tenderness in major joints. AR 255.

On November 26, 2006, Dr. Cook again reported that Plaintiff had a normal gait, grossly normal tone and muscle strength, full, painless range of motion of all major muscle groups and joints and no tenderness in major joints. AR 252.

On December 21, 2006, Plaintiff saw Dr. Cook for follow-up on his decreased libido, low energy, fatigue, low back pain and diffuse joint aches. Plaintiff reported mild fatigue and mild tiredness. He also had mild low back pain and moderate joint pain. AR 247. On examination, Plaintiff had a normal gait, grossly normal tone and muscle strength, full, painless range of motion of all major muscle groups and joints and no tenderness in major joints. AR 248-49.

On December 30, 2006, Dr. Cook completed a disability Questionnaire form. He opined that Plaintiff's medical problems precluded him from performing any full-time work at any exertional level. Dr. Cook identified Plaintiff's primary impairment as pain, which was based on objective findings of diffuse tenderness, pain, fatigue and fibromyalgia symptoms. According to Dr. Cook,

1  Plaintiff could sit for 15 minutes.  He could stand/walk for 5 minutes with the support of a cane.
2  Over an 8-hour period, he could sit for 1 hour and stand/walk for 15 minutes.  He must lie down or
3  elevate his legs for 6 hours, 45 minutes during an 8-hour day.  Dr. Cook believed Plaintiff had been
4  limited to this degree since November 13, 2005.  AR 239.

5  On the same date, Dr. Cook also completed a form for the classification of fibromyalgia.  Dr.
6  Cook identified pain in 12 of 18 tender point sites on digital palpitation.  AR 240.

7  On January 25, 2007, Plaintiff saw Dr. Cook for persistent low back pain and severe right
8  knee pain.  Plaintiff had no other complaints or problems.  On examination, Plaintiff's left knee
9  revealed crepitus, but his range of motion was preserved.  Dr. Cook assessed Plaintiff with persistent
10 left knee pain and fatigue.  AR 243.

11 On January 30, 2007, Plaintiff saw Dr. Cash for complaints of left knee pain.  Dr. Cash noted
12 that Plaintiff had lost 50 pounds.  An examination confirmed crepitus, pain and limited functional
13 movement in Plaintiff's left knee.  Plaintiff received a corticosteroid injection.  AR 284.

14 On March 6, 2007, Dr. Cash again evaluated Plaintiff's left knee because of persistent pain,
15 swelling, and an inability to use his lower extremity.  Following examination, Plaintiff was
16 diagnosed with arthrosis of the knee with anterior cruciate ligament insufficiency.  Dr. Cash
17 recommended injections, weight loss and consideration of total knee arthroplasty.  AR 283.

18 On March 27, April 3 and April 17, 2007, Plaintiff received Synvisc injections in his left
19 knee.  AR 280-82.

20 On May 1, 2007, Plaintiff saw Dr. Schunke for rheumatoid arthritis and fibromyalgia.  On
21 physical examination, Plaintiff was tender over the posterior cervical musculature and over the
22 trapezius ridge and musculature medial to the scapulae.  Plaintiff appeared stable on his current
23 regimen.  AR 315.

24 On June 4, 2007, Plaintiff complained of feeling down despite taking Prozac for fibromyalgia
25 symptoms.  On examination, his mood appeared slightly dysthymic, but not tearful.  He was
26 diagnosed with low mood and prescribed Cymbalta.  AR 307-08.

27 On June 12, 2007, Dr. Cash evaluated Plaintiff's left knee after a failed Synvisc injection and
28

7

continuing pain. On examination, Plaintiff had crepitus, pain, limited functional mobility and limited ability to ambulate. Dr. Cash recommended a total knee arthroplasty. AR 279.

On August 8, 2007, Dr. Cook noted that Plaintiff's review of systems was positive for arthralgias, back pain and limb pain. He was negative for anxiety, depression and sadness. On examination, his mood appeared euthymic. He was joking and cheerful. AR 300.

On August 14, 2007, Plaintiff underwent elective total knee arthroplasty. AR 276.

On October 2, 2007, Dr. Cash re-evaluated Plaintiff's left knee after arthroplasty. On examination, Plaintiff had 0 to 100 degrees range of motion and good stability. Dr. Cash reported that Plaintiff was doing well and should continue physical therapy. AR 274.

On October 9, 2007, Dr. Cook noted that Plaintiff had gained almost 30 pounds, and he was "fairly noncompliant by going to Taco Bell a couple of times a week and getting a lot of potatoes at home despite repeated recommendations to the contrary." AR 293. On examination, his mood was euthymic, his affect was appropriate and his insight was excellent. Plaintiff was to follow a low amylose, low cholesterol diet. Dr. Cook indicated that he would have to stop Plaintiff's Zyprexa if he gained more weight. AR 294.

On October 16, 2007, Plaintiff saw Dr. Cook for follow-up of his mood disorder. Plaintiff reported doing "exceedingly well" on Zyprexa, but had significant weight gain. On examination, Plaintiff's mood appeared euthymic. His had an appropriate affect and excellent insight. His medication was switched from Zyprexa to Seroquel. AR 292.

On October 23, 2007, Plaintiff saw Dr. Cook for persistent right shoulder pain with exacerbation. On examination, Plaintiff's range of motion was severely diminished due to guarding and pain. He had tenderness to palpation on the anterior and lateral bursa over the deltoid. He received an injection. AR 290.

On October 22, 2007, Plaintiff received follow-up treatment for rheumatoid arthritis and fibromyalgia. Dr. Schunke noted that Plaintiff was using a cane in his right hand. On examination, the small joints of his hands were without swelling and his wrists were normal. He was tender from the distal to lateral epicondyles of his elbows. He had some pain with abduction of the right

8

shoulder, which was possibly mild tendinitis. His left shoulder rotation was full without pain and his left knee had postsurgical swelling without tenderness. He also had tenderness over the trochanteric areas, the upper gluteal areas, the trapezius ridge areas to the scapulae and the low posterior cervical musculature. Plaintiff was to continue on the same medication regimen. AR 313-14.

Following Plaintiff's treatment on October 22, 2007, Dr. Schunke completed a fibromyalgia classification form. Dr. Schunke identified 14 of 18 tender point sites on digital palpation. AR 286.

On November 1, 2007, Plaintiff completed a Medication List, which identified, among other medications, hydrocodone and Norco for pain, prednisone, plaquinal and diclofenac for rheumatoid arthritis, fluoxetine for fibromyalgia and Wellbutrin and Seroquel for depression. AR 272-73.

ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2010, and had not engaged in substantial gainful activity since November 1, 2005. The ALJ further found that Plaintiff had the severe impairments of rheumatoid arthritis, fibromyalgia, obesity and left knee arthroplasty. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but could not perform tasks requiring constant or repetitious use of his hands. Based on this RFC, Plaintiff could not perform any past relevant work, but prior to December 21, 2007, could perform other jobs existing in the national economy. However, beginning on December 21, 2007, when Plaintiff's age category changed, he became disabled. AR 24-31.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole

9

1  must be considered, weighing both the evidence that supports and the evidence that detracts from the
2  Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the
3  evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*,
4  *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the
5  Commissioner's determination that the claimant is not disabled if the Commissioner applied the
6  proper legal standards, and if the Commissioner's findings are supported by substantial evidence.
7  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. § 404.1520(a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since November 1, 2005; (2) has an impairment or a combination of impairments that is considered "severe" (rheumatoid arthritis, fibromyalgia, obesity and left knee arthroplasty) based on the requirements in the Regulations (20 C.F.R. § 404.1520(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) prior to December 21, 2007, he could perform jobs that existed in significant numbers in the national economy. AR 24-31.

Here, Plaintiff contends that the ALJ erred by: (1) rejecting his testimony; (2) rejecting the

1  opinion of his treating physician, Dr. Cook; (3) failing to apply Social Security Ruling 02-1p when

2  evaluating his obesity; (4) rejecting lay witness testimony; and (5) failing to consider his obesity in

3  combination with his other impairments at Step Three of the sequential evaluation process.

4  **DISCUSSION**

5  **A.    Credibility Analysis**

6       Plaintiff first argues that the ALJ failed to provide clear and convincing reasons for rejecting

7  his testimony.

8       In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

9  pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

10 subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide " 'specific, cogent reasons for the disbelief.' " *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony ... An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

23      Here, the ALJ rejected Plaintiff's testimony, in part, because Plaintiff did not follow the

24 recommendations of his treating physician, Dr. Cook, regarding exercise and diet for weight loss.

25 AR 28.   In *Orn*, the Ninth Circuit discussed Social Security Ruling ("SSR") 02-1p, which provides

26 that before failure to follow prescribed treatment for obesity can become an issue, the Commissioner

27 must first find that the individual is disabled because of obesity.  SSR 02-1p further directs that the

28

Commissioner will rarely use failure to follow prescribed treatment for obesity to deny or cease benefits. The Ninth Circuit further clarified that "the failure to follow treatment for obesity tells us little or nothing about a claimant's credibility." *Id.* at 638. Thus, a claimant's failure to follow treatment for obesity is not a proper reason to reject a claimant's testimony unless there is clear evidence that the treatment would be successful. *Id*. at 637; SSR 02-1p.

In this case, the Commissioner contends that the ALJ did not err in his credibility determination because the Plaintiff lacked individual responsibility and chose not to follow the recommendations of his physicians regarding exercise, diet and weight loss. This contention is not persuasive. The Commissioner's argument disregards SSR 02-1p and misapplies relevant case law. Indeed, the Commissioner does not address *Orn* and there is no record evidence suggesting that any weight loss "prescription" would succeed in eliminating or ameliorating Plaintiff's obesity.

Moreover, as noted in *Orn*, treatment for obesity is often unsuccessful, weight is often regained despite a claimant's efforts and most treatments do not have a high success rate. *Orn*, 495 F.3d at 636 (quoting SSR 02-1p). Such appears to be the case here, where the record demonstrates that Plaintiff attempted to follow Dr. Cook's recommendations, having periodic weight loss and then regaining weight. AR 170-72, 284, 293. Accordingly, the ALJ erred by discounting Plaintiff's credibility based on a failure to lose weight despite Plaintiff's efforts.

The ALJ next discounted Plaintiff's credibility because his range of activities was not consistent with his allegations of disability. An ALJ is permitted to consider daily living activities in the credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Id.* at 681. Here, the ALJ cited record evidence that Plaintiff suffered back strain while painting the house and that he mows the lawn, plays guitar 30 minutes a day, and does woodworking

12

60 minutes a day.[2]  AR 28.  However, there is no indication that Plaintiff can sustain these activities for an extended period.  Indeed, Plaintiff testified that he must take breaks after 10 minutes of using his hands, it used to take 30 minutes to mow the lawn, but it now takes 2 days, and he once attempted to paint, but strained his back.  AR 47, 111, 117, 170-72.  These restricted activities do not support the conclusion that Plaintiff can work eight hours a day, five days a week, on a consistent basis.  See *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ( "[T]he mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled."); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (many home activities are not easily transferable to "the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

The ALJ attempted to discredit Plaintiff's testimony that he had to rest his hands after using them for 20 minutes because Plaintiff's rheumatologist found his condition "stable." AR 28.  This does not necessarily cast doubt on Plaintiff's subjective complaints because "stable" is a relative term.  Moreover, Plaintiff explained that he had to stop work as a BMW certified master technician because he "started losing the ability to do fine and small work" with his hands due to rheumatoid arthritis and fibromyalgia.  AR 39-40.  Dr. Schunke confirmed that Plaintiff had rheumatoid arthritis largely with hand involvement.  AR 162.

The ALJ next discredited Plaintiff's allegations because, in August 2006, Plaintiff described his back pain as mild and Dr. Cook found him to have a painless range of motion in all joints, without effusion, laxity, crepitus, or tenderness.  The ALJ also noted that Dr. Schunke generally found Plaintiff's condition to be stable.  AR 28.  Although not expressly stated, the ALJ essentially

---

[2] The Commissioner has submitted extra-record evidence regarding Plaintiff's woodworking activities.  However, this Court's jurisdiction is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record.  42 U.S.C. § 405(g); *cf*. *Haseltine v. Astrue*, 668 F.Supp.2d 1232, 1233 (N.D. Cal. 2009) (extra-record discovery is not appropriate when the court's jurisdiction is limited to review of the administrative record).  Thus, the Court has not considered the extra-record evidence.

13

was discrediting Plaintiff's allegations because they were not supported by objective evidence. A claimant's own testimony of disabling pain cannot be discredited "merely because [it is] unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1996). In this case, the ALJ's decision to discount Plaintiff's allegations based on a lack of objective evidence is not legitimate given Plaintiff's fibromyalgia. The Ninth Circuit has recognized that fibromyalgia's cause is unknown, there is no cure and it is diagnosed "entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Additionally, the Ninth Circuit has acknowledged that fibromyalgia's symptoms are entirely subjective and that there are no laboratory tests for its presence or severity. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

The ALJ next discounted Plaintiff's allegations because Dr. Schunke observed that Plaintiff used the cane in his right hand, even though his left knee was involved. AR 28. An ALJ is entitled to consider inconsistencies between a claimant's testimony and conduct and to make inferences logically flowing from the evidence. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Here, the purported inconsistency and the inference are not supported by the record. The ALJ relied on an isolated observation by Dr. Schunke, but ignored Dr. Cook's opinion that Plaintiff required a cane to stand or to walk. AR 239.

As a final matter, the ALJ discredited Plaintiff because he testified that he was taking medication for depression, but had not sought treatment from a mental health professional. AR 28. An ALJ may properly rely on a lack of mental health treatment in rejecting a claimant's credibility. *See, e.g., Burch*, 400 F.3d at 681 (9th Cir. 2005); *Murray v.* Astrue, 2011 WL 1883811, *10 and n. 2 (E.D. Cal. May 17, 2011) (ALJ properly discounted claimant's allegations of severe depression and anxiety where she only received treatment from her primary care physician); *Carreira v. Astrue,* 2011 WL 1253651, *7 (E.D. Cal. Mar. 30, 2011) (same); *but see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). The record evidence demonstrates that

14

Plaintiff did not seek any mental health treatment beyond the medication prescribed by his primary care physician. Accordingly, the ALJ did not err in discounting Plaintiff's credibility for this reason.

Although the ALJ provided at least one valid reason for discrediting Plaintiff's allegations, the remaining reasons were in error. A disability finding will not be affirmed where more than one reason was in error. *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error); *Perez v. Astrue*, 2009 WL 3011647, *13 (E.D. Cal. 2009) (court refused to affirm disability finding where two of four factors were not related to Plaintiff's credibility). Accordingly, the ALJ's credibility finding was not supported by substantial evidence and was not free of legal error.

As discussed below, the Court recommends that the matter be remanded to the Commissioner for further administrative proceedings. On remand, the ALJ should address Plaintiff's credibility and, as appropriate, provide clear and convincing reasons for rejecting his allegations.

**B.     Opinion of Treating Physician**

Plaintiff first contends that the ALJ did not specifically address the opinion of his treating physician, Dr. Cook. Plaintiff's contention is incorrect. The ALJ expressly considered Dr. Cook's assessment and assigned it little weight. AR 29.

Plaintiff next contends that the ALJ failed to provide legitimate reasons for rejecting Dr. Cook's opinion. Generally, the opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester*, 81 F.3d at 830. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v.*

15

1  *Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He
2  must set forth his own interpretations and explain why they, rather than the doctor's, are correct.
3  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion
4  must be given controlling weight if it is well-supported and not inconsistent with the other
5  substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

6        The ALJ assigned little weight to Dr. Cook's assessment for three reasons.  As discussed in
7  detail, these reasons are not legitimate.  First, the ALJ found Dr. Cook's treatment records conflicted
8  with his opinion. While an ALJ may reject a treating physician's conclusions about a claimant's
9  functional limitations that "are not supported by his own treatment notes," the ALJ's finding in this
10 case is flawed.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.2003).  The ALJ discounted Dr.
11 Cook's limitation that Plaintiff could stand and walk for fifteen minutes at a time for a total of fifteen
12 minutes in a workday because treatment records "show that the claimant's goal was to do aerobic
13 exercise for 30 minutes a day."  AR 29.  The ALJ's own words identify the flaw; to wit, the 30
14 minutes of exercise was a "goal."  Dr. Cook's records did not demonstrate that Plaintiff, in fact,
15 exercised for 30 minutes every day.

16       Second, the ALJ attempted to discount Dr. Cook's opinion that Plaintiff needed to spend six
17 hours, forty-five minutes of an eight-our workday lying down because it was inconsistent with
18 Plaintiff's level of activity.  If the record of a claimant's daily activities does not support a
19 physician's opinion, the ALJ may properly reject that opinion.  *See Batson*, 359 F.3d at 1196;
20 *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding rejection of
21 physician's opinion on the basis of claimant's reported activities).  In this case, the ALJ's evaluation
22 of the record is unsupported by substantial evidence.  The ALJ points to Plaintiff's woodworking,
23 guitar playing and lawn mowing.  For the same reasons these activities were insufficient to discount
24 Plaintiff's credibility, they are insufficient to discount Dr. Cook's opinion.

25       Third, and finally, the ALJ assigned little weight to Dr. Cook's opinion because his findings
26 were "actually more in the nature of subjective findings."  AR 29.  By essentially demanding what

16

1  amounts to "objective evidence" of Plaintiff's fibromyalgia and pain, the ALJ erred. *See Beneke,*
2  *379 F.3d at 594* (ALJ erred by "effectively requiring objective evidence for a disease that eludes such
3  measurement"). In December 2006, Dr. Cook identified objective findings of diffuse tenderness,
4  pain, fatigue and fibromyalgia symptoms. AR 239. Dr. Cook's diagnosis of fibromyalgia was
5  sufficiently based on objective medical findings of tender points and correlated with Dr. Schunke's
6  diagnosis and findings.

7       Accordingly, the ALJ failed to offer convincing reasons for rejecting Dr. Cook's opinion in
8  favor of the state agency physician's opinion that Plaintiff had no severe impairment. The opinion of
9  a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection
10 of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d
11 502, 506 n. 4 (9th Cir. 1990); *Gallant*, 753 F.2d at 1456. This error may be corrected on remand by
12 reevaluation of Dr. Cook's opinion, by providing specific and legitimate reasons supported by
13 substantial evidence if that opinion is rejected and by developing the medical record.

14 **C.   Evaluation of Obesity**

15      Plaintiff asserts that the ALJ failed to apply Social Security Ruling 02-1p when making a
16 negative credibility finding based on Plaintiff's failure to follow his doctor's treatment plan and lose
17 weight. Opening Brief, pp. 18-19. As discussed above, in light of SSR 02-1p and *Orn*, 495 F.3d at
18 635-36, the ALJ erroneously discounted Plaintiff's credibility based on a failure to lose weight.

19 **D.   Lay Witness Testimony**

20      Plaintiff argues the that ALJ improperly rejected the statements of his wife, Mrs. Oberdieck.
21 However, the ALJ did not reject such evidence. Indeed, the ALJ cited Mrs. Oberdieck's report of
22 certain statements and concluded that they showed Plaintiff engaged in "a wide range of daily
23 activities." AR 27. Rather, Plaintiff's argument is that the ALJ did not adopt all of the limitations
24 identified by Mrs. Oberdieck, including her statements that Plaintiff could not stand or walk without
25 his cane, could not kneel, could only climb two stairs and mostly sat in a recliner with a pillow under
26 his knee. AR 120-21. In other words, Plaintiff faults the ALJ for rejecting those portions of Mrs.

27
28

Oberdieck's testimony that corroborate the limitations identified by both Plaintiff and his treating physicians.

While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony only by providing "reasons that are germane to each witness." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)). The ALJ's decision provides no basis to determine why he rejected those portions of Mrs. Oberdieck's statements supporting Plaintiff's claims. The ALJ cannot pick and choose from the evidence to support his conclusions. *See, e.g., Gallant*, 753 F.2d at 1455-56 (9th Cir. 1984) (discussing impropriety of isolating a specific quantum of supporting evidence).

On remand, the ALj will review the lay witness testimony of Mrs. Oberdieck and provide reasons for any rejection of her testimony.

**E.     Step 3 Equivalence Determination**

As a final argument, Plaintiff contends that the ALJ failed to consider whether Plaintiff's combination of impairments met a Listing at Step 3 of the sequential evaluation. Plaintiff's argument is without merit. First, the ALJ expressly found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 24. In so doing, the ALJ stated, "[n]o medical expert has found that the claimant's impairments are equivalent in medical severity to a listed impairment." AR 24.

Second, the ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez*, 914 F.2d at 1201 (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 638. This is particularly true where the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined

effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment). Here, Plaintiff identifies no evidence to show his impairments combined to equal any listed impairment. Thus, the ALJ did not err at Step 3 of the sequential evaluation.

**F.     Remand**

The decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *McAllister*, 888 F.2d at 603 (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings . . . or where the record has been thoroughly developed.").

Here, the Court finds that the errors identified above can be remedied with further proceedings and recommends remand. On remand, the ALJ should address these errors by properly evaluating the medical evidence, including the opinion of Plaintiff's treating physician. Remand also is appropriate to allow the ALJ to consider properly the Plaintiff's subjective complaints and the lay witness testimony and to incorporate such consideration in evaluating the medical record and Plaintiff's functional limitations.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, this Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED AND THE ACTION BE REMANDED FOR FURTHER PROCEEDINGS.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 5, 2011**                    /s/ **Dennis L. Beck**
                                                                       UNITED STATES MAGISTRATE JUDGE